# EXHIBIT 1

This is historical material "frozen in time". The website is no longer updated and links to external websites and some internal pages may not work.



## Briefing Room

Your Weekly Address

Speeches & Remarks

Press Briefings

Statements & Releases

White House Schedule

**Presidential Actions**

**Executive Orders**

Presidential Memoranda

Proclamations

Legislation

Nominations & Appointments

Disclosures

**The White House**

Office of the Press Secretary

For Immediate Release                                    July 01, 2013

# Executive Order -- Combating Wildlife Trafficking

EXECUTIVE ORDER

- - - - - - -

COMBATING WILDLIFE TRAFFICKING

By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to address the significant effects of wildlife trafficking on the national

interests of the United States, I hereby order as follows:

Section 1. Policy. The poaching of protected species and the illegal trade in wildlife and their derivative parts and products (together known as "wildlife trafficking") represent an international crisis that continues to escalate. Poaching operations have expanded beyond small-scale, opportunistic actions to coordinated slaughter commissioned by armed and organized criminal syndicates. The survival of protected wildlife species such as elephants, rhinos, great apes, tigers, sharks, tuna, and turtles has beneficial economic, social, and environmental impacts that are important to all nations. Wildlife trafficking reduces those benefits while generating billions of dollars in illicit revenues each year, contributing to the illegal economy, fueling instability, and undermining security. Also, the prevention of trafficking of live animals helps us control the spread of emerging infectious diseases. For these reasons, it is in the national interest of the United States to combat wildlife trafficking.

In order to enhance domestic efforts to combat wildlife trafficking, to assist foreign nations in building capacity to combat wildlife trafficking, and to assist in combating transnational organized crime, executive departments and agencies (agencies) shall take all appropriate actions within their authority, including the promulgation of rules and regulations and the provision of technical and financial assistance, to combat wildlife trafficking in accordance with the following objectives:

(a) in appropriate cases, the United States shall seek to assist those governments in anti-wildlife trafficking activities when requested by foreign nations experiencing trafficking of protected wildlife;

(b) the United States shall promote and encourage the development and enforcement by foreign nations of effective laws to prohibit the illegal taking of, and trade in, these species and to prosecute those who engage in wildlife trafficking, including by building capacity;

(c) in concert with the international community and partner organizations, the United States shall seek to combat wildlife trafficking; and

(d) the United States shall seek to reduce the demand for illegally traded wildlife, both at home and abroad, while allowing legal and legitimate commerce involving wildlife.

Sec. 2. Establishment. There is established a Presidential Task Force on Wildlife Trafficking (Task Force), to be co-chaired by the Secretary of State, Secretary of the Interior, and the Attorney General (Co-Chairs), or their designees, who shall report to the President through the National Security Advisor. The Task Force shall develop and implement a National Strategy for Combating Wildlife Trafficking in accordance with the objectives outlined in section 1 of this order, consistent with section 4 of this order.

Sec. 3. Membership. (a) In addition to the Co-Chairs, the Task Force shall include designated senior-level representatives from:

Case 1:17-cv-01464-ABJ   Document 12-3   Filed 03/15/18   Page 4 of 77

(i) the Department of the Treasury;

(ii) the Department of Defense;

(iii) the Department of Agriculture;

(iv) the Department of Commerce;

(v) the Department of Transportation;

(vi) the Department of Homeland Security;

(vii) the United States Agency for International Development;

(viii) the Office of the Director of National Intelligence;

(ix) the National Security Staff;

(x) the Domestic Policy Council;

(xi) the Council on Environmental Quality;

(xii) the Office of Science and Technology Policy;

(xiii) the Office of Management and Budget;

(xiv) the Office of the United States Trade Representative; and

(xv) such agencies and offices as the Co-Chairs may, from time to time, designate.

(b) The Task Force shall meet not later than 60 days from the date of this order and periodically thereafter.

Sec. 4. Functions. Consistent with the authorities and responsibilities of member agencies, the Task Force shall perform the following functions:

(a) not later than 180 days after the date of this order, produce a National Strategy for Combating Wildlife Trafficking that shall include consideration of issues relating to combating trafficking and curbing consumer demand, including:

(i) effective support for anti-poaching activities;

(ii) coordinating regional law enforcement efforts;

(iii) developing and supporting effective legal enforcement mechanisms; and

(iv) developing strategies to reduce illicit trade and reduce consumer demand for trade in protected species;

(b) not later than 90 days from the date of this order, review the Strategy to Combat Transnational Organized Crime of July 19, 2011, and, if appropriate, make recommendations regarding the inclusion of crime related to wildlife trafficking as an implementation element for the Federal Government's transnational organized crime strategy;

(c) coordinate efforts among and consult with agencies, as appropriate and consistent with the Department of State's foreign affairs role, regarding work with foreign nations and international bodies that monitor and aid in enforcement against crime related to wildlife trafficking; and

(d) carry out other functions necessary to implement this order.

Sec. 5. Advisory Council on Wildlife Trafficking. Not later than 180 days from the date of this order, the Secretary of the Interior (Secretary), in consultation with the other Co-Chairs of the Task Force, shall establish an Advisory Council on Wildlife Trafficking (Advisory Council) that shall make recommendations to the Task Force and provide it with ongoing advice and assistance. The Advisory Council shall have eight members, one of whom shall be designated by the Secretary as the Chair. Members shall not be employees of the Federal Government and shall include knowledgeable individuals from the private sector, former governmental officials, representatives of nongovernmental organizations, and others who are in a position to provide expertise and support to the Task Force.

Sec. 6. General Provisions. (a) This order shall be implemented consistent with applicable domestic and international law, and subject to the availability of appropriations.

(b) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department, agency, or the head thereof, or the status of that department or agency within the Federal Government; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) Insofar as the Federal Advisory Committee Act, as amended (5 U.S.C. App.) (the "Act"), may apply to the Advisory Council, any functions of the President under the Act, except for that of reporting to the Congress, shall be performed by the Secretary in accordance with the guidelines issued by the Administrator of General Services.

(e) The Department of the Interior shall provide funding and administrative support for the Task Force and Advisory Council to the extent permitted by law and consistent with existing appropriations.

BARACK OBAMA



https://news.nationalgeographic.com/news/2014/08/140818-elephants-africa-poaching-cites-census.html

# 100,000 Elephants Killed by Poachers in Just Three Years, Landmark Analysis Finds

Central Africa has lost 64 percent of its elephants in a decade.

**Good News for Elephants: Major Ivory Market Will Close** : place in Bouba Ndjidah National Park, Cameroon, in 2012. Armed with grenades and AK-47s, poachers killed more than 300.

PHOTOGRAPH BY BRENT STIRTON, NATIONAL GEOGRAPHIC/GETTY IMAGES

Ivory-seeking poachers have killed 100,000 <u>African elephants</u> in just three years, according to a new study that provides the first reliable continent-wide estimates of illegal kills. During 2011 alone, roughly one of every twelve African elephants was killed by a poacher.

In central Africa, the hardest-hit part of the continent, the regional elephant population has declined by 64 percent in a decade, a finding of the new study that supports <u>another recent estimate</u> developed from field surveys.

The demand for ivory, most notably in China and elsewhere in Asia, and the confusion caused by a one-time sale of confiscated ivory have helped keep black market prices high in Africa.

The new study, <u>published in the August 19 issue of *Proceedings of the National Academy of Sciences*,</u> led by George Wittemyer of Colorado State University, included local and regional population estimates and concluded that three-quarters of local elephant populations are declining.

The study authors conducted the first large-scale analysis of poaching losses using data on illegally killed elephants maintained by <u>CITES</u> (the Convention on International Trade in Endangered Species of Wild Fauna and Flora).

Wittemyer and his team hope the new information will move the discussion beyond anecdotes and wild guesses. "I think it's the only quantitatively based estimate out there," he said.

Researchers and conservationists hope the analysis will prompt policy makers to take further action to stem the years-long onslaught of poaching, which now threatens the survival of elephants in Africa.

poaching trends, but those estimates <u>limited the analysis to just 66 sites</u> that were being monitored.

"Nobody's put out any scientifically-based numbers for the continent," Wittemyer said. "People have said numbers, but they're based off guesses. This is the first hard estimate we have at that level."

Confiscated elephant tusks and boxes of figurines carved from ivory sit in the main hall of the National Wildlife Property Repository, in Colorado.

PHOTOGRAPH BY KATE BROOKS, REDUX

### Targeting the Policymakers

Although conservationists have agreed for years that there's an ongoing poaching crisis with huge implications for the future of African elephants, the

of animals killed by poachers.

In recent years poachers have perpetrated mass killings, such as the 2012 slaughter of hundreds of elephants with automatic weapons in Bouba Ndjidah National Park in Cameroon.

Poachers have also used poisoned arrows to kill iconic individual elephants. In February, a poison-tipped arrow killed Torn Ear, a well-known Kenyan elephant. (See "Mourning the Loss of a Great Elephant: Torn Ear.") Three months later, Satao, another of Kenya's most beloved elephants, was also killed by a poisoned arrow by poachers, who cut off his face to remove his massive tusks. (See "Beloved African Elephant Killed for Ivory—'Monumental' Loss.")

These criminal acts have prompted some official actions, including a U.S. ban on the commercial trade in ivory, but the killings continue at an unsustainable level, with new births unable to keep pace with the killings.

"At the higher policy levels there have been a lot of questions and debate about what the numbers actually are, what they indicate, and how we should be interpreting them," Wittemyer noted.

"There hasn't been a robust scientific piece to rely on definitively as the source. In my mind what we've locked down here and provided the community— and in my mind we're really targeting the policymakers—are definitive numbers on which they can act and on which they can discuss and debate approaches they can take."

### Hard-Won Numbers

In 2002 CITES created a program called MIKE (Monitoring the Illegal Killing of Elephants) to attempt to quantify the number of elephants killed by poachers. Rangers at MIKE sites note all dead elephants they find and determine what proportion of the dead animals was illegally killed.

But the growing number of locations where monitoring is done—the program now monitors between 30 and 40 percent of the population—is still only

Case 1:17-cv-01464-ABJ   Document 12-3   Filed 03/15/18   Page 10 of 77

these sites are monitored.

     Another problem is that no one knows how many African elephants there are. Elephants are present over many thousands of square miles, which makes it expensive and time-consuming to estimate their overall numbers.

https://news.nationalgeographic.com/news/2014/08/140818-elephants-africa-poaching-cites-census/                    5/18

VIRGINIA W. MASON AND BRAD SCRIBER, NGM STAFFSOURCES: COLORADO STATE UNIVERSITY; SAVE THE ELEPHANTS; MONITORING THE ILLEGAL KILLING OF ELEPHANTS (MIKE); DEPARTMENT OF ZOOLOGY, UNIVERSITY OF OXFORD; KENYA WILDLIFE SERVICE; DIANE SKINNER, AFRICAN ELEPHANT SPECIALIST GROUP, IUCN.

The most recent comprehensive population estimate for the continent—a range of between 472,000 and 690,000 elephants—was published in 2007 by the IUCN's African Elephant Specialist Group. That figure was based on the best available data at the time, which for some locations were already nearly a decade old.

The African Elephant Specialist Group continually collects updated population survey data for portions of the continent and shares them with researchers via its public database. But it has yet to produce a new comprehensive population estimate for the continent. Meanwhile, a continent-wide aerial survey, the Great Elephant Census, is under way, with results expected in mid-2015.

**Modeling the Numbers**

For their study, Wittemyer and his co-authors used the most recent population numbers available from the African Elephant Specialist Group database for well-monitored locations. The researchers calculated that in the absence of poaching, about 3 percent of an elephant population would be expected to die each year.

Applying the percentage of deaths from poaching in 2010 through 2012, derived from MIKE data at the most closely monitored sites, they were able to

continent-wide."

Kenneth Burnham, the statistician with the MIKE program who devised this method, used a similar approach to project the number *National Geographic* magazine used in its October 2012 cover story, "Ivory Worship." The magazine reported that "it is 'highly likely' that poachers killed at least 25,000 African elephants in 2011. The true figure may even be double that."

The new study puts the 2011 number at 40,000 elephants slaughtered at the hands of poachers.

Trevor Jones, of the Southern Tanzania Elephant Project, who didn't participate in the study, said, "I think this paper represents an honest attempt to interpret the MIKE data, and no doubt its results and conclusions are broadly correct in describing an overall trend of large declines in elephant populations across Africa."

He points to continued misgivings about the MIKE numbers because they are based on a smaller number of carcasses than aerial surveys. "Aerial censuses of the Selous Game Reserve," Jones said, "estimate a decline from 2009 to 2013 of 39,000 to 13,000—yet the MIKE data estimate 4,931 elephants poached from 2010 to 2012."

Jones, like many others, is eager for the results of the forthcoming Great Elephant Census. "The best way to update data on population sizes in most areas is by aerial sampling, and I strongly suspect that the census is going to confirm the unprecedented scale of the current crisis for elephants across the continent. Those results cannot come a day too soon."

But aerial surveying has drawbacks too. Forest elephants can't be seen from the air, and assessing their numbers takes labor-intensive foot surveys of dung piles. A recent forest elephant survey took "80 foot-surveys; covering 13,000 km; 91,600 person-days of fieldwork," according to the study abstract.

### What We Lose When We Lose Elephants

diversity to the point where healthy and robust populations become dangerously weakened.

But, as Wittemyer said, the problem is greater than genetic diversity. "You're talking about the distribution of species and its ecological role."

Elephants are vital to the web of life in Africa. As a keystone species, they help balance all the other species in their ecosystem, opening up forest land to create firebreaks and grasslands, digging to create water access for other animals, and leaving nutrients in their wake. Sometimes called the "megagardeners of the forest," elephants are essential to the dispersal of seeds that maintain tree diversity.

Since three out of four local populations are declining, those losses have serious ecological implications. "That's a problem we probably didn't speak to strongly enough in this paper," Wittemyer said.

*Follow Brad Scriber on Twitter.*

**RELATED**

- "Pictures: World Elephant Day"
- "Poachers Slaughter Dozens of Elephants in Key African Park"
- "What Elephant Calls Mean: A User's Guide"
- "In Hong Kong, Kids Take Action Against Illegal Ivory Trade"
- "Efforts to Curb Ivory Trafficking Spreading, But Killing Continues"

FROM THE WEB     Sponsored By ZergNet

Here's How Stephen Hawking Predicted the World Will End

Weird Things You Never Knew About Cleopatra

15 Famous People Who May Never Have Existed

These Mysterious Underwater Cities Are

The Real Reason Humans Need to Sleep Under

Mysterious Nomads May Be the Last Generation to

# EXHIBIT 2



The Challenge Blog

🏠    ABOUT  ▾    ISSUES  ▾    INNOVATORS  ▾    NEWS

# THE CHALLENGE BLOG

Photo Credit: USAID

## National Whistleblower Center: Leveraging U.S. laws to beat wildlife crime worldwide

9 February 2016

f    🐦    G+    in    ✉



Stephen M. Kohn and Dr. Gina Green of NWC. *Photo credit: Leslie Rose Photography*

For almost 30 years, the ethos "Honesty without Fear," has defined the work of National Whistleblower Center (NWC), a team of lawyers and security experts led by executive director **Steve Kohn**. Based in Washington DC, NWC works with and for whistleblowers everywhere in the world, providing legal advice and representation, practical information about rights and rewards, and opportunities to securely and confidentially make disclosures.

We are pleased to announce NWC as the winner of the Wildlife Crime Tech Challenge People's Choice competition. NWC was also named one of 16 Challenge Prize Winners for its pioneering efforts to tackle corruption linked to wildlife crime. Prize Winners receive $10,000, technical and networking assistance, and a chance to compete for as much as $500,000 in funding.

What is a whistleblower and why are they important? Broadly speaking, a whistleblower is an individual or association of individuals that reports fraud, corruption, corporate misconduct, or other violations of law to the appropriate authorities, often on behalf of the public interest. U.S. laws offer whistleblowers greater confidentiality, protection and, potentially, reward than those in any other country. According to recent data, whistleblower reward laws now account for roughly 80 percent of all U.S. civil fraud prosecutions.

NWC supports whistleblowers including those that have information about a violation of three American laws: the U.S Securities Exchange Act, the Commodities Exchange Act, and/or the Foreign Corrupt Practices Act.

Still, getting whistleblowers to come forward—and securing prosecutions from the information they provide—is very difficult and demanding work. Mr. Kohn likens it to navigating a freighter through a storm, with the whistleblower representing precious cargo.

The organization considers two factors as vital in its efforts: ***confidentiality* and *monetary reward***. While the former is important, it is often not enough to induce witnesses to come forward. Monetary rewards are essential because whistleblowers may face dismissal from work, legal costs, and even long-term stigma. Reward terms can be quite generous: whistleblowers that provide original information leading to a successful enforcement are entitled to between 10 percent and 30 percent of money recovered as a result of their action, if that money is worth over $1 million.

According to Mr. Kohn, only about three percent of witnesses to wrongdoing ever speak about it to someone outside their organization and, of this small proportion, even fewer reach out to the relevant regulatory agency. "Once word gets out about a whistleblower receiving a reward," he says, "disclosures skyrocket." However, when whistleblowers suffer ostracism or retaliation, others with valuable information become too frightened to come forward.

The Securities and Exchange Commission changed its rules in 2011 to establish a whistleblower program, and this had a transformative effect. As Mr. Kohn explains, "The United States' ability to use its laws transnationally to tackle corruption has increased." The nearly global reach of American law enforcement encourages whistleblowers to come forward, even those living in countries with weak democratic governance.

In the last five years, whistleblowers from 94 countries have used American laws to file over 1500 claims, and over $30 million has been paid to witnesses that exposed wrongdoing[1].

traffickers and poachers, and NWC seized it. The organization's co-chair, **Dr. Gina Green**, who has over two decades of experience in environmental advocacy, played an instrumental role in pushing the launch of NWC's *Protect Wildlife Crime Whistleblowers* campaign. NWC's winning Challenge solution is an integral component of that campaign.

The internet has been a boon for NWC and its ability to reach out to whistleblowers wherever they may be. "We want people to be able to press a button and see information about the relevant laws in their language," Mr. Kohn says of the online platform. "Chinese, Russian, Japanese, Portuguese, French and others." NWC also hopes to use information about trade routes to choose languages in which to provide information.

NWC isn't resting on its laurels although there's little competition. "No one else is out there doing what we do, not in the government nor in the private sector," claims Mr. Kohn. And while the organization is hoping other countries will pass domestic laws that encourage whistleblowing, there's little evidence to suggest this is imminent. "The U.S. is 25 years ahead of any other country in the world, including the other members of the Organization for Economic Co-operation and Development."

Long a singular force in the global fight against corruption and fraud, NWC has now added wildlife crime to its portfolio.

[1] http://www.whistleblowers.org/anti-corruption

💬 0 comments

# COMMENTS

**\* denotes required field**

**Subject**

[                                        ]

**Your Name\***

[                                        ]

# MEET OUR
# GRAND PRIZE WINNERS

## CONGRATULATIONS TO THE GRAND PRIZE WINNERS!

We are proud to award more than $900,000 to our four Grand Prize Winners! Chosen from **16 elite Prize Winners**, these innovators presented truly exceptional and promising innovations that can significantly impact the fight against the illegal trafficking of terrestrial and marine wildlife.

The Grand Prizes will accelerate and scale these groundbreaking science and tech solutions in the fight against wildlife crime.

The Wildlife Crime Tech Challenge Prize Winners need an active community of supporters to help them stamp out illegal wildlife trade. For more information or to support our winners, contact us at **info@wildlifecrimetech.org**.

# THE GRAND PRIZE WINNERS





**Issue Area:** Strengthen forensic evidence

**The Problem:** Illicit wildlife trade is hidden in legally documented shipments because no system exists to analyze shipments at the "species per box" level or in real time.

**The Solution:** New England Aquarium's Automated Shipment Forensics leverages "smart invoice" technology to help port inspectors find illegal trade hidden in plain sight. Automated Shipment Forensics uses computer vision to convert the paper copy of each shipping declaration and invoice into a digital format, and then conducts real-time forensic analyses on shipment information, determining a pattern-matched probability assessment of illegal trade. By providing real-time forensics on suspicious trade activity, the technology eliminates the need for port agents to manually sift through paper invoices and enables them to act swiftly.

## Enforcement Gaps Interface

**New York University**



**Issue Area:** Detect transit routes



issue. At the same time, the monitoring of the online wildlife trade continues to rely primarily on manual search techniques that typically occur over short periods of time.

**The Solution:** The Enforcement Gaps Interface is a secure, web-based interface that incorporates a computational model and the power of machine learning. The Enforcement Gaps Interface is designed to help non-governmental organizations, law enforcement agencies, and retailers identify online trafficking of protected and illegal wildlife and wildlife parts both domestically and internationally, and help map transit routes for trafficked wildlife and wildlife parts.



### Genetically Tracking the Illegal Pangolin Trade to Identify Poaching Hotspots

**The University of Washington**

  

**Issue Area:** Strengthen forensic evidence

**The Problem:** Over the last decade, more than one million pangolins have been taken from the wild. However, little is known about the populations being targeted or their numbers.

trade. By developing genetic markers that can distinguish between pangolin populations, the University of Washington will create a global genetic reference map, filling in the map using geo-referenced tissue samples from museums and wild dung samples located by detection dogs. Using this map, the team can pinpoint the sources of large pangolin seizures, helping authorities focus on poaching hotspots and identify at-risk populations.



Wildlife Crime Tech Challenge: Nationa...

## The Global Wildlife Whistleblower Program

**The National Whistleblower Center**

  

**Issue Area:** Tackle corruption

**The Problem:** Illegal wildlife trade has increased sharply in recent decades, in part due to the low risk of detection, and trafficking is frequently committed by complex criminal networks.

**The Solution:** The National Whistleblower Center's Global Wildlife Whistleblower Program is designed to protect and incentivize insiders to report evidence of illegal wildlife trafficking confidentially and anonymously via an online platform. The program incorporates a transnational

# MEET OUR WINNERS

## CONGRATULATIONS TO THE CHALLENGE WINNERS!

On January 20, 2016, USAID announced the Prize Winners for the Wildlife Crime Tech Challenge. These 16 Winners presented exceptional innovations, distinguishing themselves from a talented pool of 300 applicants from 52 countries. Prize Winners will receive $10,000 and technical assistance to further their solutions, in addition to a chance to apply for a Grand Prize of $500,000.

## SEE WINNING SOLUTIONS THAT:









DETECT TRANSIT ROUTES

STRENGTHEN FORENSIC EVIDENCE

REDUCE CONSUMER DEMAND

TACKLE CORRUPTION

## STRENGTHEN FORENSIC EVIDENCE & DATA SHARING

## Meet the Prize Winners!

Learn more ›

🏠　ABOUT ▾　ISSUES ▾　INNOVATORS ▾　NEWS

The Wildlife Crime Tech Challenge was initiated in 2014 and closed in November 2017. For the latest information on USAID's approach to combating wildlife trafficking, please visit www.USAID.gov/biodiversity/wildlife-trafficking. For the latest information on individual Tech Challenge Winners, their contact information may be found on the Winners page.

## WE ARE PROUD TO ANNOUNCE OUR GRAND PRIZE WINNERS!

We are proud to award more than $900,000 to our four Grand Prize Winners! Chosen from **16 elite Prize Winners**, these innovators presented truly exceptional and promising innovations that can significantly impact the fight against the illegal trafficking of terrestrial and marine wildlife. **Find out more!**

## SOLUTIONS WILL HELP:



DETECT
TRANSIT ROUTES



STRENGTHEN
FORENSIC EVIDENCE



REDUCE
CONSUMER DEMAND



TACKLE
CORRUPTION

## We reward solutions that address four critical wildlife crime issues

### REDUCE CONSUMER DEMAND

**The Problem:** Cultural and societal norms influence surging demand for illegal wildlife. Live wildlife and their parts are used as pets, status symbols, ornaments, food, medicine, and religious symbols. Lack of awareness means that many consumers do not realize their actions contribute to the decimation of wild animal populations and an underground criminal trade that hurts economies and communities.

**Show me these solutions ›**



## MEET OUR PRIZE WINNERS!

# THE CHALLENGE PARTNERS

Photo Credit: USAID

## THE CHALLENGE PARTNERS

The Wildlife Crime Tech Challenge is an initiative of the U.S. Agency for International Development (USAID) in partnership with the National Geographic Society, the Smithsonian Institution, and TRAFFIC.



**USAID** is the lead U.S. Government agency working to end extreme global poverty and enable resilient, democratic societies to realize their potential. The loss of iconic wildlife and the presence of violent elements linked to wildlife trafficking threaten nature-based tourism and undermine development gains in many countries where USAID works.



The **U.S. Global Development Lab**, established in April 2014, is an entity within USAID that brings together a diverse set of partners to discover, test, and scale breakthrough solutions to achieve what human progress has only now made possible - the end of extreme poverty by 2030.

National Geographic increases global awareness of wildlife-crime issues through features in the National Geographic Magazine, National Geographic Kids Magazine, exhibits, events, books, National Geographic Channel, documentaries, and blogs. National Geographic also elevates understanding and action by carrying out research on critically important issues such as global ivory consumption, supporting scientists and conservationists who battle wildlife crime, and recognizing ideas and individuals that contribute to the reduction of wildlife crimes. National Geographic works closely with on-the-ground partners to forge collaborations and develop initiatives that lead to innovations in fighting wildlife crimes.



🏠    ABOUT ▾    ISSUES ▾    INNOVATORS ▾    NEWS



The **Smithsonian Institution**, the world's largest museum and research complex, is committed to combating wildlife trafficking through state-of-the-art research and public engagement. The Consortium for the Barcode of Life, hosted at the National Museum of Natural History, uses DNA barcoding for investigating and prosecuting wildlife crime. The Smithsonian is a founder of the Global Tiger Initiative, which builds capacity for combating illegal trafficking of tigers in Asia through education and training. In 2015, the Smithsonian launched a pan-institutional initiative on ivory and wildlife trafficking aimed at raising public awareness by leveraging its diverse museum collections and communication platforms.

organization in its field, TRAFFIC has almost 40 years of expertise in understanding and addressing the drivers of wildlife trade. Its science-based approach to understanding illegal wildlife consumption is shaping effective consumer behavior change. The organization has also been at the forefront of encouraging routine forensic examination of wildlife crimes and enforcement training, and exposing and mitigating the negative impacts of illegal trade.

# THE CHALLENGE IMPLEMENTATION TEAM



The Challenge is implemented on behalf of USAID and its partners by **Integra LLC**, with subcontractor support from PricewaterhouseCoopers Public Sector LLP and Sonjara, Inc.

IN PARTNERSHIP WITH









This website is made possible by the support of the American People through the **United States Agency for International Development** (USAID). The Wildlife Crime Tech Challenge is supported by USAID's Forestry and Biodiversity Office under Contract #AID-OAA-C-14-00182 with Integra Government Services International LLC, with subcontractor support from PricewaterhouseCoopers Public Sector LLP and Sonjara, Inc. The information provided on this website is not official U.S. government information and does not necessarily represent the views or positions of

# WILDLIFE CRIME TECH CHALLENGE

## THE PROBLEM

Wildlife crime — poaching and trafficking in wildlife and wildlife products — endangers elephants, rhinos, tigers, sharks, parrots, and many other species. It also threatens the safety and development prospects of rural communities in wildlife-rich areas. International criminal networks use poverty and fear to recruit local poachers and traffickers, and take advantage of weak laws and enforcement, porous borders, and corrupt officials. Nature-based tourism, an important source of revenue in many developing countries, is threatened by the loss of iconic wildlife and increased risk of encountering heavily armed criminals.

## THE CHALLENGE

The **Wildlife Crime Tech Challenge** called on innovators around the world to share their science and technology solutions to combat the illegal trade in terrestrial and marine wildlife. An initiative of USAID in partnership with the National Geographic Society, the Smithsonian Institution, and TRAFFIC, the Challenge rewarded innovations that tackle four key issues:



**A thai officer carries a skull confiscated in Bangkok. Identifying and intercepting shipments of illegal wildlife products is one of many challenges in combating wildlife crime.**
*Tassanee Vejpongsa, Freeland Foundation*

- Understanding and shutting down trafficking routes

- Improving forensic tools and data gathering to build strong criminal cases

- Reducing consumer demand for illegal wildlife products

- Combating corruption along the illegal wildlife supply chain

## CROWDSOURCING INNOVATION

The Tech Challenge received 300 applications from 52 countries around the world. Forty-four finalists were invited to compete for a Prize Package of $10,000 and technical and networking support to scale their solutions. In January 2016, **16 Prize Winners** were announced, each of whom presented exceptional innovations with the potential to positively impact the fight against wildlife crime. In the final stage of the competition, USAID awarded more than $900,000 to **four Grand Prize Winners** chosen from this elite group.

Visit **wildlifecrimetech.org** to read about our winners, learn more about the Challenge, and register for updates. Click **here** to download a one-page summary of the project.

# RELATED LINKS

**Combating Wildlife Trafficking**

# EXHIBIT 3

# NWC | NATIONAL WHISTLEBLOWER CENTER

P.O. Box 25074, Washington, D.C. 20027  | (202) 342-1902 | www.whistleblowers.org

Ms. Pam Mozina
Government Information Specialist (FOIA)
U.S. Fish & Wildlife Service
Division of Information Resources & Technology Management
5275 Leesburg Pike
MS: IRTM
Falls Church, VA 22041
Via email:  pamela_mozina@fws.gov

Michael Jenkins
FOIA Coordinator
Via email:  michael_jenkins@fws.gov

April 3, 2017

Dear Ms. Mozina and Mr. Jenkins:

This letter comprises the FOIA request that I submitted to the Fish and Wildlife Service on behalf of the National Whistleblower Center (NWC) on April 1, 2017 using the Department of Interior's online form. As described below, due to the urgency involved in this request I am requesting expedited processing.

**Request Description**

1) I am requesting any and all documents regarding the Lacey Act Reward Fund and/or the Lacey Act Reward Account (hereinafter referred to as the "Lacey Act Reward Fund" or "Fund"). In particular, I am requesting:
    a. Any and all documents regarding the Fund's creation (including but not limited to the specific document that establishes the Fund as a lawful entity within the Department of Interior and/or Fish and Wildlife Service)
    b. The Fund's annual budget (including all income, all expenses, and all payments for FY2012, FY2013, FY2014, FY2015 and FY2016)
    c. Any rules/regulations/guidance documents regarding the administration of the Fund.
    d. A Copy of any internal report within the Department of Interior that discusses the Fund

    As an example, The Lacey Act Reward Fund is referenced in Plea Agreement at 4, *United States v. Lumber Liquidators*, No. 2:15-cr-00126 (E.D. Va. Oct. 22, 2015), ECF No. 11. Fines and penalties directed to the Fund are to be addressed as follows:
    
    U.S. Fish and Wildlife Service
    Division of Financial Management/Denver Operations
    Cost Accounting
    P.O. Box 272065
    Denver, CO 80227

Fund - 122x
Organizational Code - 99000

2) I am requesting any and all information, particularly the official written delegation of authority, for any office that has been empowered to grant a reward under the following statutes:

    a. The Lacey Act, 16 U.S.C. § 3375(d)
    b. The Endangered Species Act, 16 U.S.C. § 1540(d)

3) I am requesting any and all records explaining how money allocated to the Lacey Act Reward Fund is spent. Specifically, I am requesting an accounting from the following allocations:

- *United States of America v. Yiwei Zheng*, 0:15-cr-00092-JRT-LIB (D. Minn.)
  - $500,000 fine directed to the Lacey Act Reward Fund
    c/o
    U.S. Fish and Wildlife Service
    Division of Financial Management/Denver Operations
    Cost Accounting
    P.O. Box 272065
    Denver, CO 80227
    Fund - 122x
    Organizational Code - 99000
  - Judgment entered on June 1, 2016.

- *United States of America v. Paul Zombik*, 3:12-cr-30035-MAP-1 (D. Mass.)
  - $50,000 fine directed to the Lacey Act Reward Fund
  - Judgment entered on February 27, 2014.

- *United States of America v. Ferdinand Krizan*, 1:15-cr-00187-001 (W.D.N.Y.)
  - $30,000 fine directed to Lacey Act Reward Fund
  - Judgment entered May 20, 2016

- *United States of America v. Jay Anthony Anderson*, 0:16-cr-00139-SRN (D. Minn.)
  - $100,000 fine directed to Lacey Act Reward Fund
  - Judgment entered September 20, 2016

- *United States of America v. Lumber Liquidators, Inc.*, 2:15-cr-00126-RAJ-LRL (E.D. Va.)
  - $7,800,000 fine directed to Lacey Act Reward Fund with the note "Case No. 2012803149"
  - Judgment entered February 3, 2016.

## Expedited Processing

I am requesting expedited processing for these documents. Under the Department of the Interior's Freedom of Information Act regulations, expedited processing will be granted if the request demonstrates a compelling need for the records. A compelling need is demonstrated in instances "where there is an urgency to inform the public about an actual or alleged Federal Government

activity and the request is made by a person primarily engaged in disseminating information." 43 C.F.R. § 2.20(a)(2).

NWC was a grand prize winner in the Wildlife Crime Tech Challenge, an initiative of USAID in partnership with the National Geographic Society, the Smithsonian Institution, and TRAFFIC. Pursuant to the Challenge, the NWC is engaged in educating public officials, NGOs, whistleblowers, and the public regarding wildlife whistleblower reward laws and is making recommendations for improvements to these laws that will be published.

The production of these documents is particularly timely because NWC is actively engaged in providing information to the Government Accountability Office (GAO) for a forthcoming report regarding wildlife whistleblower rewards. The GAO will be drafting their report imminently, and it is imperative that NWC be able to provide them with the necessary information. It is expected that this GAO report will be widely circulated.

This report will help the public understand the operations of government. The NWC, with its unique expertise in this area, will be able to evaluate the information provided to aid in the American public's understanding.

Further, the information provided in these documents will also be used to educate the general public on the use of whistleblower reward laws to combat wildlife trafficking. The NWC has a longstanding reputation as a "publisher." It disseminates information not only through its website, but also through its respected and well-used Twitter account, its Facebook page, and its blog. In 2016, the NWC website was visited by 125,835 users and had 271,311 pageviews. In addition, NWC has approximately 90,000 people on its "action alert" email list (akin to a newsletter), and sends out frequent alerts involving whistleblower laws and legislative campaigns. Representatives from NWC have appeared on most major national television and radio shows.  Additional information regarding NWC's public outreach can be found on NWC's website, www.whistleblowers.org.

Stephen Kohn, NWC's Executive Director, is requesting expedited processing for this request just as he did in 2015 (when this request was granted) to gather information for his article, "Monetary Rewards for Wildlife Whistleblowers: A Game-Changer in Wildlife Trafficking Detection and Deterrence," 46 ELR 10054 (January 2016). Mr. Kohn also has published a critically acclaimed guide to whistleblowing, "The Whistleblower's Handbook: A Step-by-step Guide to Doing What's Right and Protecting Yourself." The third edition of this book will be published in just a few months.

The lack of publicly available information regarding the Lacey Act Reward Fund and the procedure for obtaining whistleblower rewards under the Lacey Act and the ESA and the pressing need for NWC to provide GAO with information justify our request for expedited processing and a fee waiver.

Special notification: Please immediately review. We will file a preliminary injunction against Fish and Wildlife Service if these requested documents are not provided and/or a suitable working schedule for their production is not in place within ten (10) business days.

Pursuant to 43 C.F.R. § 2.20(b)(2), I certify that the above explanation is true and correct to the best of my knowledge and belief.

**Fee waiver**

I am also requesting a waiver of all fees associated with the processing of these documents because the disclosure of this information is "in the public interest because it is likely to contribute significantly to public understanding of government operations or activities," and "not primarily in [our] commercial interest." 43 C.F.R. § 2.45(a). Although I am requesting a full waiver, due to the expedited processing request and the urgency involved, NWC agrees to pay up to $100.

Our fee waiver request meets the requirements of 43 C.F.R. § 2.45(a) and qualifies for a full fee waiver. Below, I will discuss the criteria listed in 43 C.F.R. § 2.48(a)(1)-(4).

*43 C.F.R. § 2.48(a)(1): How the requested records concern the operations or activities of the Federal Government.*

This request concerns the use of fines and penalties allocated to the Lacey Act Reward Fund. The Federal government allocates the money, and thus this request clearly concerns the operations and activities of the Federal government.

*43 C.F.R. § 2.48(a)(2): How disclosure is likely to contribute to public understanding of those operations or activities*

The disclosure of information about the Lacey Act Reward Fund will help the public understand how the Fund works and what the money is used for. Wildlife trafficking is a huge concern for both the public and the Government. *See* Eliminate, Neutralize, and Disrupt [END] Wildlife Trafficking Act of 2016, 16 U.S.C. § 7612(1) ("It is the policy of the United States to take immediate actions to stop the illegal global trade in wildlife and wildlife products and associated transnational organized crime.") See also *Presidential Executive Order on Enforcing Federal Law with Respect to Transnational Criminal Organizations and Preventing International Trafficking*, No. 13773, 82 Fed. Reg. 10,691 (Feb. 9, 2017) ("It shall be the policy of the executive branch to strengthen enforcement of Federal law in order to thwart transnational criminal organizations … that present a threat to public safety and national security and that are related to … illegal smuggling and trafficking of humans, drugs or other substances, wildlife, and weapons.")

Further, it is unrefuted that laws that encourage whistleblowers to report wrongdoing by offering monetary rewards have proven to be "the most powerful tool the American people have to protect the government from fraud."[1] By allowing the public access to information regarding the Lacey Act Reward Fund, more people will be encouraged to report.

*43 C.F.R. § 2.48(a)(3):How disclosure is likely to significantly contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to your individual understanding*

The National Whistleblower Center is a 501(c)(3) nonprofit organization and serves to advocate for the improvement of whistleblower-related policies and educate the public about whistleblower laws. NWC effectively disseminates information on its routinely updated website with extensive

---

[1] Stuart Delery, Assistant Attorney General, Remarks at the American Bar Association's 10th National Institute on the Civil False Claims Act and Qui Tam Enforcement (June 5, 2014), http://www.justice.gov/iso/opa/civil/speeches/2014/civ-speech-140605.html

information concerning whistleblower law. As stated above, the NWC website was visited by 125,835 users and had 271,311 pageviews in 2016.

In addition, the information requested would constitute new information. Based on our extensive research, there is currently no publicly available information about the creation of the Lacey Act Reward Fund nor any disbursements from the Fund.

*43 C.F.R. § 2.48(a)(4): How the public's understanding of the subject in question will be enhanced to a significant extent by the disclosure*

Because there is currently no publicly available information, disclosure will inherently significantly advance the public's understanding.

Finally, in accordance with 43 C.F.R. § 2.48(b), NWC must disclose any commercial interest that would be furthered by the requested disclosure. NWC has no commercial interest in this request. However, if somehow a commercial interest is identified, it should be clear that this disclosure will be used in a manner consistent with NWC's past publications and will therefore be used primarily to advance public awareness and the knowledge of policymakers in key issues related to whistleblower law.

Thank you for your assistance with this matter.


Sincerely,

Rebecca Guiterman
Staff Attorney
National Whistleblower Center
3238 P Street NW, Washington, DC 20007

# EXHIBIT 4

**From:** "Hendry, Melanie (USADC)" <Melanie.Hendry2@usdoj.gov>
**Date:** Thursday, November 2, 2017 at 2:36 PM
**To:** Stephen Kohn <sk@kkc.com>
**Cc:** Maya Efrati <me@whistleblowers.org>
**Subject:** RE: NWC v. Interior, 1:17-cv-01464-ABJ

Steve,

Please note that in light of the pending litigation, all communications concerning the response to the specific FOIA request that is the subject of this lawsuit should be directed to my attention rather than to the agency directly.  This does not, of course, apply with respect to your communications concerning any other FOIA requests not the subject of this lawsuit.

With respect to your inquiries both below and in the October 17 letter, the agency has advised as follows:

- All non-exempt responsive records have been produced.

- To the extent the documents you specifically referenced in your November 1, 2017 letter were not produced, such documents either do not exist or could not be located following a reasonable search.

- The agency will provide a Vaughn index during summary judgment briefing, if necessary

Thanks,

Melanie

---

**From:** Stephen Kohn [mailto:sk@kkc.com]
**Sent:** Thursday, November 2, 2017 12:00 PM
**To:** Hendry, Melanie (USADC) <MHendry1@usa.doj.gov>
**Cc:** Maya Efrati <me@whistleblowers.org>
**Subject:** Re: NWC v. Interior, 1:17-cv-01464-ABJ
**Importance:** High

Hi Melanie – Another follow-up –

In our FOIA request we had identified a number of specific prosecutions in which the court had directed monies be deposited into the Lacey Act Reward Fund.  Based on the information provided by the agency, it does not appear as if we received documents regarding the use of these funds, which were clearly covered under the FOIA.  Inasmuch as the cases are public, it would appear as if this part of the FOIA request should have been easy for the agency to comply with.

Please let me know about these documents.  I am hoping that we can resolve the disclosure issues prior to submitting our joint status report.  I am willing to talk with agency representatives about the documents being requested, and try to work out a reasonable process for disclosure.

Also, my law clerk, Maya Efrati, is helping with this case.  I have copied her on this email.  Please copy her on future correspondence.

Thanks!

Best,  Steve Kohn


Stephen M. Kohn |Partner
Kohn, Kohn & Colapinto, LLP
3233 P Street NW, Washington, DC 20007
(202) 342-6980
(202) 342-6984
Website | Blog | Linkedin | Twitter | Facebook

Important Notice. Please Carefully Review: This e-mail transmission (and any and all attachments) is intended only for the personal and confidential use of the recipient(s) designated above. This e-mail (including any and all attachments) contains strictly confidential attorney-client communications and/or attorney work product and is legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein (including any and all attachments) is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 202-342-6980, or by return e-mail, immediately. Also, to ensure compliance with requirements imposed by the IRS, we inform you that, unless expressly stated otherwise, any advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) obtaining tax advice. Thank you.

**From:** "Hendry, Melanie (USADC)" <Melanie.Hendry2@usdoj.gov>
**Date:** Wednesday, November 1, 2017 at 7:12 PM
**To:** Stephen Kohn <sk@kkc.com>
**Subject:** RE: NWC v. Interior, 1:17-cv-01464-ABJ

Steve,

Thank you for your email.  I will note the change.  Please note that, as indicated in the cover letter, the October 17 release was the agency's final response to the FOIA request at issue in the above-referenced case (namely, plaintiff's request dated April 3, 2017 which was assigned reference number FWS-2017-00677). Thus, the agency has already released all non-exempt records responsive to that request and no further documents are forthcoming.

Kind regards,

Melanie

---

**From:** Stephen Kohn [mailto:sk@kkc.com]
**Sent:** Wednesday, November 1, 2017 6:41 PM
**To:** Hendry, Melanie (USADC) <MHendry1@usa.doj.gov>
**Subject:** Re: NWC v. Interior, 1:17-cv-01464-ABJ

Dear Melanie – FYI, Rebecca Guiterman has taken another job, so please send all emails/correspondence directly to me.

We received a letter from DOI/FWS dated Oct. 17, 2017 transmitting documents regarding one of the subject areas of our FOIA.  I assume there will be other documents coming on or before Nov. 6th.  Please send them to my attention, not Rebecca's.  You can use the address below.  If you need a copy of the Oct. 17th letter from Edward Grace (signed by, I think, Kathleen Sully), please let me know.  But I assume you have this.

Best,  Steve Kohn

Stephen M. Kohn |Partner
Kohn, Kohn & Colapinto, LLP
3233 P Street NW, Washington, DC 20007
(202) 342-6980
(202) 342-6984
Website | Blog | Linkedin | Twitter | Facebook

Important Notice. Please Carefully Review: This e-mail transmission (and any and all attachments) is intended only for the personal and confidential use of the recipient(s) designated above. This e-mail (including any and all attachments) contains strictly confidential attorney-client communications and/or attorney work product and is legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein (including any and all attachments) is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 202-342-6980, or by return e-mail, immediately. Also, to ensure compliance with requirements imposed by the IRS, we inform you that, unless expressly stated otherwise, any advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) obtaining tax advice. Thank you.

---

**From:** "Hendry, Melanie (USADC)" <Melanie.Hendry2@usdoj.gov>
**Date:** Wednesday, September 27, 2017 at 11:54 AM
**To:** Stephen Kohn <sk@kkc.com>
**Subject:** RE: NWC v. Interior, 1:17-cv-01464-ABJ

Hi Steve –

Per agency counsel, the agency currently anticipates that it can produce all responsive documents by November 6.  Please let me know plaintiff's thoughts concerning that timing.

Thanks,

Melanie

---

**From:** Stephen Kohn [mailto:sk@kkc.com]
**Sent:** Friday, September 15, 2017 3:31 PM
**To:** Hendry, Melanie (USADC) <MHendry1@usa.doj.gov>
**Subject:** Re: NWC v. Interior, 1:17-cv-01464-ABJ

Hi Melanie – We are considering filing our own motion for summary judgment on the expedited processing.  Thus, if the documents were going to be delivered in a short period of time, that would impact our decision as to prepare such a motion and/or to file.  Steve

Stephen M. Kohn |Partner
Kohn, Kohn & Colapinto, LLP
3233 P Street NW, Washington, DC 20007
(202) 342-6980
(202) 342-6984
Website |Blog | Linkedin | Twitter | Facebook

Important Notice. Please Carefully Review: This e-mail transmission (and any and all attachments) is intended only for the personal and confidential use of the recipient(s) designated above. This e-mail (including any and all attachments) contains strictly confidential attorney-client communications and/or attorney work product and is legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein (including any and all attachments) is Strictly Prohibited. If you have received this communication in
error, please notify us by telephone, at 202-342-6980, or by return e-mail, immediately. Also, to ensure compliance with requirements imposed by the IRS, we inform you that, unless expressly stated otherwise, any advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) obtaining tax advice. Thank you.

---

**From:** "Hendry, Melanie (USADC)" <Melanie.Hendry2@usdoj.gov>
**Date:** Friday, September 15, 2017 at 3:15 PM
**To:** Stephen Kohn <sk@kkc.com>
**Subject:** RE: NWC v. Interior, 1:17-cv-01464-ABJ

Steve,

Although I am working with agency counsel and expect to have all necessary information by the October 6 deadline, I do not currently know whether I will be in a position to provide any further response than this to your inquiry by September

20.  Please let me know what the reason is for requesting this information be provided by that date, which is nearly 2 weeks before the court ordered deadline.  Although you mentioned that you are considering filing your own motion, I'm not able to ascertain from your email what kind of motion you have in mind and how that may relate to September 20.  Please advise.

Thanks,

Melanie

---

**From:** Stephen Kohn [mailto:sk@kkc.com]
**Sent:** Friday, September 15, 2017 2:50 PM
**To:** Hendry, Melanie (USADC) <MHendry1@usa.doj.gov>
**Cc:** Byrd, ShaNae (USADC) <SByrd@usa.doj.gov>; Rebecca Guiterman <rg@whistleblowers.org>; David Colapinto <dc@kkc.com>
**Subject:** NWC v. Interior, 1:17-cv-01464-ABJ

Dear Melanie:  We represent the National Whistleblower Center in the above-captioned FOIA case.  We understand that the court has ordered your client to file a motion for summary judgment and/or a report setting forth a schedule for release of documents on or before October 6, 2017.   Please let me know if your client will be producing the requested documents and/or setting forth a reasonable production schedule.  Because we are considering filing our wn motion, it is important to know whether your client will be producing the documents any time soon.

I look forward to hearing from you by COB, September 20, 2017.

If you have any questions whatsoever, or want to further discuss this case, please do not hesitate to contact us.

Sincerely yours,  Steve Kohn

Stephen M. Kohn |Partner
Kohn, Kohn & Colapinto, LLP
3233 P Street NW, Washington, DC 20007
(202) 342-6980
(202) 342-6984
Website |Blog | Linkedin| Twitter | Facebook

Important Notice. Please Carefully Review: This e-mail transmission (and any and all attachments) is intended only for the personal and confidential use of the recipient(s) designated above. This e-mail (including any and all attachments) contains strictly confidential attorney-client communications and/or attorney work product and is legally privileged. If you are not the intended recipient of this communication (or an agent responsible for delivering it to the intended recipient), you are hereby notified that any review, disclosure or use of the information contained herein (including any and all attachments) is Strictly Prohibited. If you have received this communication in error, please notify us by telephone, at 202-342-6980, or by return e-mail, immediately. Also, to ensure compliance with requirements imposed by the IRS, we inform you that, unless expressly

# EXHIBIT 5

CM/ECF    Query    Reports ▾    Utilities ▾    Help    Log Out

**0:15-cr-00092-JRT-LIB All Defendants** USA v. Zheng
**Date filed:** 03/18/2015
**Date terminated:** 06/01/2016
**Date of last filing:** 06/24/2016

Mobile Query

**Query**

Alias
Associated Cases
Attorney
Case File Location...
Case Summary
Deadlines/Hearings...
Docket Report ...
Filers
History/Documents...
Party
Related Transactions...
MDL Case Report
View a Document

AO 245B (Rev. 2/16) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Minnesota

UNITED STATES OF AMERICA

v.

**YIWEI ZHENG**

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: **15-92 (JRT/LIB)**
USM Number: **18485-041**
Social Security Number: 1370
Date of Birth: 1972

**Timothy Webb and Evan Weiner**
Defendant's Attorney

## THE DEFENDANT:

[**X**]  pleaded guilty to count(s): **2 and 4 of the indictment**.
[]  pleaded nolo contendere to counts(s)  which was accepted by the court.
[]  was found guilty on count(s)  after a plea of not guilty.
The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:554 | Smuggling | 03/31/2015 | 2 |
| 16:3372(a)(1) and 3373(d)(1)(A) | Lacy Act Violation | 03/31/2015 | 4 |

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[]  The defendant has been found not guilty on counts(s) **.**
[**X**]  Count(s) **1, 3, 5, 6** (is)(are) dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material change in the economic circumstances.

**May 9, 2016**
Date of Imposition of Judgment

s/John R. Tunheim
Signature of Judge

**JOHN R. TUNHEIM**, Chief United States District Judge
Name & Title of Judge

**June 1, 2016**
Date

AO 245B (Rev. 11/11)  Sheet 4 - Probation

| | |
|---|---|
| DEFENDANT: | ZHENG, YIWEI |
| CASE NUMBER: | 15-92 (JRT) |

# PROBATION

The defendant is hereby sentenced to probation for a term of **3 years on each count to run concurrent.**

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

[X]  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[X]  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[X]  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[]  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.(Check, if applicable.)

[]  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it shall be a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without permission of the court or probation officer;
2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  the defendant shall support his or her dependants and meet other family responsibilities;
5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 11/11)  Sheet 4A - Probation

| | |
|---|---|
| DEFENDANT: | ZHENG, YIWEI |
| CASE NUMBER: | 15-92 (JRT/LIB) |

## ADDITIONAL PROBATION TERMS

a     The defendant shall provide the probation officer access to any requested financial information, including credit reports, credit card bills, bank statements, and telephone bills.

b     The defendant is prohibited from engaging in the import, export, trade, purchase, or sale of any endangered or threatened species during the term of supervision.

c     The defendant shall perform 150 hours of community service, as directed by the probation officer.

d     The defendant shall serve a total of 6 (six) weekends intermittent confinement as directed by the supervising U.S. Probation Officer.  Specifically, for each weekend of confinement, the defendant shall report to the designated facility by 7:30 p.m. on Friday and released from the facility at 7:30pm on Sunday.

AO 245B (Rev. 11/11) Sheet 5 - Criminal Monetary Penalties

DEFENDANT: ZHENG, YIWEI
CASE NUMBER: 15-92 (JRT/LIB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $200.00 | $500,000 | $0.00 |

[] The determination of restitution is deferred until . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[x] The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. §3664(i), all nonfederal victims must be paid before the United States is paid.

| Name and Address of Payee | **Total Loss | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| U.S. Fish and Wildlife Service<br>Division of Financial Management/Denver Operations<br>Cost Accounting<br>P.O. Box 272065<br>Denver, CO 80227<br>Fund - 122x<br>Organizational Code - 99000 |  | $500,000.00 |  |
|  |  |  |  |
|  |  |  |  |
| **TOTALS:** | $0.00 | $500,000.00 | 0.00% |
| **Payments are to be made to the Clerk, U.S. District Court, for disbursement to the victim.** | | | |

[] Restitution amount ordered pursuant to plea agreement $.

[] The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

[] The court determined that the defendant does not have the ability to pay interest and it is ordered that:

[] the interest requirement is waived for the [] fine [] restitution.

[] the interest requirement for the: [] fine [] restitution is modified as follows:

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 11/11) Sheet 6 - Schedule of Payments

| DEFENDANT: | ZHENG, YIWEI |
|---|---|
| CASE NUMBER: | 15-92 (JRT/LIB) |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  [x]  Lump sum payment of **$500,000.00** due immediately, balance due

         [] not later than , or
         [] in accordance  [] C, [] D, [] E, or  [] F below; or

B  []  Payment to begin immediately (may be combined with [] C,  [] D, or [] F below); or

C  []  Payment in equal  (e.g., weekly, monthly, quarterly)  installments of $  over a period of  (e.g. months or years),  to commence  (e.g. 30 or 60 days) after the date of this judgment; or

D  []  Payment in equal  (e.g., weekly, monthly, quarterly)  installments of $  over a period of  (e.g. months or years),  to commence  (e.g. 30 or 60 days ) after the release from imprisonment to a term of supervision; or

E  []  Payment during the term of supervised release will commence within  (e.g. 30 or 60 days ) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  []  Special instructions regarding the payment of criminal monetary penalties:


Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are to be made to the clerk of court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.


[]  Joint and Several
      Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate:


[]  The defendant shall pay the cost of prosecution.


[]  The defendant shall pay the following court cost(s):


[]  The defendant shall forfeit the defendant's interest in the following property to the United States:



Payments shall be applied in the following order: (1) assessment, (2) restitution  principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7)penalties, and (8) costs, including costs of prosecution and court costs.

Page 5

# EXHIBIT 6



AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
                   Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| V. | |
| **Paul Zombik** | Case Number: **3   12 CR 30035   - 01   - MAP** |
| | USM Number:   **04558-036** |
| | Bart W. Heemskerk, Esq. |

| | | Defendant's Attorney | ☐ Additional documents attached |
|---|---|---|---|
| Date of Original | 2/28/2014 | | |

☐

**THE DEFENDANT:**

☑ pleaded guilty to count(s)     1-3

☐ pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☐ was found guilty on count(s) _____
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:          Additional Counts - See continuation page ☐

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 16 U.S.C. § 3372(a)(2)(A | Importation of Live Fish and Wildlife in violation of Massachusetts State I | 02/25/09 | 1-3 |

The defendant is sentenced as provided in pages 2 through    **10**    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

02/27/14
Date of Imposition of Judgment

Signature of Judge

The Honorable Michael A. Ponsor

Judge, U.S. District Court

Name and Title of Judge

3/3/14
Date

✎AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
                Sheet 2 - D. Massachusetts - 10/05

DEFENDANT: **Paul Zombik**               ■      Judgment — Page  2  of  10
CASE NUMBER: **3 12 CR 30035 - 01 - MAP**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:     12    month(s)

and one day (1) to run concurrent

☑ The court makes the following recommendations to the Bureau of Prisons:

Placement at the federal facility in Fort Devens, Massachusetts

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at                  ☐ a.m.   ☐ p.m.   on                   .

    ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑ before 2 p.m. on   09/28/14        .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on                            to                      

a                              , with a certified copy of this judgment.

                                                  UNITED STATES MARSHAL

                         By                                
                                            DEPUTY UNITED STATES MARSHAL

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

| | Judgment—Page 3 of 10 |
|---|---|

DEFENDANT: **Paul Zombik** ✚
CASE NUMBER: **3 12 CR 30035 - 01 - MAP**

## SUPERVISED RELEASE

☐ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    24   month(s)

concurrent on each count

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed 104 tests per year, as directed by the probation officer.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

DEFENDANT:  **Paul Zombik**

CASE NUMBER: **3 12 CR 30035 - 01 - MAP**

Judgment—Page  4  of  10 

## ADDITIONAL☑ SUPERVISED RELEASE☐ PROBATION TERMS

1. The defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.

2. The defendant is to pay the balance of any fine imposed according to a court ordered repayment schedule.

3. The defendant is prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

4. The defendant is to provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office.

5. The defendants may not, either directly or indirectly, deal in live fish of any kind except koi, goldfish and crayfish. Nor may the defendants own, either directly or indirectly, or be employed by, either directly or indirectly, a company that deals in live fish of any kind except koi, goldfish and crayfish.

## Continuation of Conditions of ☑ Supervised Release ☐ Probation

6. Defendant to pay any fine he pays shall be deposited into the Lacey Act Reward Account established by 16 U.S.C. § 3375(d).

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
                  Sheet 5 - D. Massachusetts - 10/05

DEFENDANT:     **Paul Zombik**                                      Judgment — Page ____5____ of ___10___
CASE NUMBER: **3 12 CR 30035 - 01 - MAP**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** $ | $300.00 | $   $50,000.00 | $ |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|

☐ See Continuation Page

**TOTALS**        $ _____ $0.00        $ _____ $0.00

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☑ the interest requirement is waived for the  ☑ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

1:17-cv-01464-ABJ                                                                53

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

DEFENDANT:   **Paul Zombik**                Judgment — Page ___6___ of ___10___
CASE NUMBER: 3  12 CR 30035  - 01  - MAP

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☐  Lump sum payment of $ _____ due immediately, balance due

      ☐  not later than _____, or
          in accordance  ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

      Special assessment to be paid immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several                                       ☐ See Continuation
                                                       Page

      Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
           Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:    **Paul Zombik**          ◼       Judgment — Page  7  of  10
CASE NUMBER: **3 12 CR 30035  - 01  - MAP**
DISTRICT:         **MASSACHUSETTS**

## STATEMENT OF REASONS

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A  ☐    **The court adopts the presentence investigation report without change.**

B  ☑    **The court adopts the presentence investigation report with the following changes.**
     (Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
     (Use Section VIII if necessary.)

    1    ☑   **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or
            specific offense characteristics):

            Court did not apply a 2 level enhancement court determines base level to be 21

    2    ☐   **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments,
            role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

    3    ☐   **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or
            scores, career offender, or criminal livelihood determinations):

    4    ☐   **Additional Comments or Findings** (including comments or factual findings concerning certain information in the
            presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
            or programming decisions):

C  ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A  ☑    No count of conviction carries a mandatory minimum sentence.

B  ☐    Mandatory minimum sentence imposed.

C  ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
       sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
       does not apply based on

       ☐   findings of fact in this case
       ☐   substantial assistance (18 U.S.C. § 3553(e))
       ☐   the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:        21
Criminal History Category:   III
Imprisonment Range:    46      to   57      months
Supervised Release Range:   1        to   3      years
Fine Range: $  10,000      to  $  100,000
☑   Fine waived or below the guideline range because of inability to pay.

AO 245B (05-MA)  (Rev. 06/05) Criminal Judgment
Attachment (Page 2) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT: **Paul Zombik**  ➕

Judgment — Page  8  of  10

CASE NUMBER: **3  12  CR  30035  - 01  - MAP**

DISTRICT:  **MASSACHUSETTS**

## STATEMENT OF REASONS

**IV**  **ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A  ☐  The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B  ☐  The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons. (Use Section VIII if necessary.)

C  ☐  The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual. (Also complete Section V.)

D  ☑  The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V**  **DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A  **The sentence imposed departs** (Check only one.):
  ☑  below the advisory guideline range
  ☐  above the advisory guideline range

B  **Departure based on** (Check all that apply.):

1  **Plea Agreement** (Check all that apply and check reason(s) below.):
  ☐  5K1.1 plea agreement based on the defendant's substantial assistance
  ☐  5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
  ☐  binding plea agreement for departure accepted by the court
  ☐  plea agreement for departure, which the court finds to be reasonable
  ☐  plea agreement that states that the government will not oppose a defense departure motion.

2  **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
  ☐  5K1.1 government motion based on the defendant's substantial assistance
  ☐  5K3.1 government motion based on Early Disposition or "Fast-track" program
  ☐  government motion for departure
  ☐  defense motion for departure to which the government did not object
  ☐  defense motion for departure to which the government objected

3  **Other**
  ☐  Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C  **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 | Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 | Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 | Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 | Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 | Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 | Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 | Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 | Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 | Discharged Terms of Imprisonment |
| | | | | | | ☐ | | Other guideline basis (e.g., 2B1.1 commentary) |

D  **Explain the facts justifying the departure.** (Use Section VIII if necessary.)

AO 245B (05-MA)  (Rev. 06/05) Criminal Judgment
        Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

DEFENDANT:    **Paul Zombik**                                    Judgment — Page  9  of    10
CASE NUMBER: **3  12 CR  30035   - 01   - MAP**
DISTRICT:            **MASSACHUSETTS**

## STATEMENT OF REASONS

**VI    COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A    **The sentence imposed is** (Check only one.):
    ☑ below the advisory guideline range
    ☐ above the advisory guideline range

B    **Sentence imposed pursuant to** (Check all that apply.):

    1    **Plea Agreement** (Check all that apply and check reason(s) below.):
        ☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
        ☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
        ☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline
            system

    2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
        ☐ government motion for a sentence outside of the advisory guideline system
        ☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
        ☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

    3    **Other**
        ☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.)

C    **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

    ☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
    ☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
    ☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
    ☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
    ☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
        (18 U.S.C. § 3553(a)(2)(D))
    ☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
    ☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D    **Explain the facts justifying a sentence outside the advisory guideline system.** (Use Section VIII if necessary.)

    The Court imposed a sentence outside of and below the advisory guideline range due to consideration of 18 U.S.C. § 3553
    (a) factors, to include: 1.) The severe consequences of the collapse of the business: 2.) The guideline range is inflated : 3.)
    The defendant's strong family support: and 4. The defendant has an unusually strong support system and poses a low risk of
    recidivism.

AO 245B ( 05-MA) (Rev. 06/05) Criminal Judgment
Attachment (Page 4) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT: **Paul Zombik**
CASE NUMBER: **3 12 CR 30035 - 01 - MAP**
DISTRICT: **MASSACHUSETTS**

Judgment — Page 10 of 10

## STATEMENT OF REASONS

### VII COURT DETERMINATIONS OF RESTITUTION

A ☑ Restitution Not Applicable.

B ☐ Total Amount of Restitution: _____

C ☐ Restitution not ordered (Check only one.):

   1 ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

   2 ☐ For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

   3 ☐ For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

   4 ☐ Restitution is not ordered for other reasons. (Explain.)

D ☐ Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

### VIII ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 1964

Defendant's Residence Address:

Defendant's Mailing Address: Holyoke MA

Date of Imposition of Judgment
02/27/14

Signature of Judge
The Honorable Michael A. Ponsor   Judge, U.S. District Court

Name and Title of Judge
Date Signed 3/2/14

# EXHIBIT 7



AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 1                                                                          LMMsb (1916192)

# UNITED STATES DISTRICT COURT

## Western District Of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| Ferdinand Krizan | ) | Case Number:    1:15CR00187-001 |
| | ) | |
| | ) | USM Number:    26767-055 |
| | ) | |
| | ) | Rodney O. Personius |
| | | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)                                   1 of the Information

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 16 U.S.C. §3372(a)(1) and §3373(d)(1)(B) | Trafficking in Prohibited Wildlife | 05/31/2014 | 1 |

      The defendant is sentenced as provided in pages 2 through _____3_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

      It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

May 19, 2016
Date of Imposition of Judgment

Signature of Judge

Honorable Frank P. Geraci Jr., Chief U.S. District Judge
Name and Title of Judge

5/20/16
Date

AO 245B    (Rev. 09/11) Judgment in a Criminal Case                                                                LMM/sb (1916192)
           Sheet 5 — Criminal Monetary Penalties

|  | Judgment — Page 2 of 3 |
|---|---|

DEFENDANT:        Ferdinand Krizan
CASE NUMBER:      1:15CR00187-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100 | $ 30,000 | $ 0 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered
☐  after such determination.

The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒  the interest requirement is waived for the    ☒  fine    ☐  restitution.

☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
            Sheet 6 — Schedule of Payments

LMM/sb (191619:

| | | | Judgment — Page | 3 | of | 3 |

**DEFENDANT:**      Ferdinand Krizan
**CASE NUMBER:**      1:15CR00187-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**    ☐    Lump sum payment of $ _____ due immediately, balance due

       ☐    not later than _____ , or
       ☐    in accordance    ☐ C,    ☐ D,    ☐ E, or    ☐ F below; or

**B**    ☒    Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☒ F below); or

**C**    ☐    Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**    ☐    Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☒    Special instructions regarding the payment of criminal monetary penalties:

       The defendant shall pay a special assessment of $100, which shall be due immediately. If incarcerated, payment shall begin under the Bureau of Prisons Inmate Financial Responsibility Program. Payments shall be made to the Clerk, U.S. District Court (WD/NY), 2 Niagara Square, Buffalo, New York 14202.
       Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is sentenced to a $30,000 fine, payable to the Lacey Act Reward Account, which is due immediately. Payment shall be forwarded to U.S. Fish and Wildlife Service P.O. Box 272065, Denver, CO 80227-9060, referencing the "Lacey Act Reward Account."

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐      Joint and Several

       Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐      The defendant shall pay the cost of prosecution.

☐      The defendant shall pay the following court cost(s):

☒      The defendant shall forfeit his interest in the property specifically set forth in the presentence report and Section VII of the Plea Agreement.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# EXHIBIT 8

CM▥ECF        Query    Reports ⌄    Utilities ⌄    Help    Log Out

**0:16-cr-00139-SRN All Defendants** USA v. Anderson
**Date filed:** 05/16/2016
**Date terminated:** 09/27/2016
**Date of last filing:** 02/13/2017

Mobile Query

**Query**

Alias
Associated Cases
Attorney
Case File Location...
Case Summary
Deadlines/Hearings...
Docket Report ...
Filers
History/Documents...
Party
Related Transactions...
MDL Case Report
View a Document

AO 245B (Rev. 2/16) Sheet 1 - Judgment in a Criminal Case

# United States District Court

## District of Minnesota

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| | (For Offenses Committed On or After November 1, 1987) |
| v. | Case Number: **16CR139 (SRN)** |
| | USM Number: **20650-041** |
| **JAY ANTHONY ANDERSON** | Social Security Number: 2381 |
| | Date of Birth: 1949 |

**Joseph S. Friedberg**
Defendant's Attorney

## THE DEFENDANT:

[X]  pleaded guilty to count(s): **One and Two of the Information**.
[]  pleaded nolo contendere to counts(s)  which was accepted by the court.
[]  was found guilty on count(s)  after a plea of not guilty.
The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 554 | Smuggling | June 10, 2011 | One |
| 16 U.S.C. §§3372(a)(1) & 3373(d)(1)(B) | Lacey Act - Sale of Wildlife | December 31, 2012 | Two |

The defendant is sentenced as provided in pages 2 through 5 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[]  The defendant has been found not guilty on counts(s) **.**
[]  Count(s)  (is)(are) dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material change in the economic circumstances.

**September 20, 2016**
Date of Imposition of Judgment

s/Susan Richard Nelson
Signature of Judge

**SUSAN RICHARD NELSON**, United States District Judge
Name & Title of Judge

September 27, 2016
Date

Page 1

AO 245B (Rev. 11/11)   Sheet 4 - Probation
_____

DEFENDANT:         JAY ANTHONY ANDERSON
CASE NUMBER:       16CR139 (SRN)

# PROBATION

The defendant is hereby sentenced to probation for a term of **Two years. This sentence consists of two years on Count One and Two Years on Count Two, to be served concurrently.**

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

[X]     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[X]     The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[X]     The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[]      The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.(Check, if applicable.)

[]      The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it shall be a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)   the defendant shall support his or her dependants and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 11/11)  Sheet 4A - Probation

DEFENDANT:      JAY ANTHONY ANDERSON
CASE NUMBER:     16CR139 (SRN)

### ADDITIONAL PROBATION TERMS

a    The defendant shall not commit any crimes, federal, state, or local.

b    The defendant shall abide all mandatory and standard conditions of probation recommended by the Sentencing Commission.

c    The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

d    The defendant shall perform 200 hours of community service, as approved by the probation officer.  The Court strongly recommends that the community service focus on speaking or writing about the importance of protecting wildlife.

e    The defendant shall provide the probation officer access to any requested financial information, including credit reports, credit card bills, bank statements, and telephone bills.

f    The defendant is prohibited from engaging in the import, export, trade, purchase, or sale of any endangered or threatened species, including all species regulated by the CITES, and including all articles composed in whole or part of elephant ivory.

AO 245B (Rev. 11/11)  Sheet 5 - Criminal Monetary Penalties

DEFENDANT:     JAY ANTHONY ANDERSON
CASE NUMBER:    16CR139 (SRN)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $200.00 | $100,000.00 | $0 |

[]    The determination of restitution is deferred until . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[X]    The defendant shall pay a fine of $100,000.00 to the Clerk of Court for distribution to the payee listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. §3664(i), all nonfederal victims must be paid before the United States is paid.

| Name and Address of Payee | **Total Loss | Fine Amount | Priority or Percentage |
|---|---|---|---|
| U.S. Fish and Wildlife Service<br>Division of Financial Management/Denver Operations<br>Cost Accounting<br>P.O. Box 272065<br>Denver, CO 80227<br>Fund - 122x<br>Organizational Code 99000 |  | $100,000.00 |  |
| **TOTALS:** |  | **$100,000.00** |  |
| **Payments are to be made to the Clerk, U.S. District Court.** | | | |

[]    Restitution amount ordered pursuant to plea agreement **$**.

[]    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

[X]    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    [X]   the interest requirement is waived for the [X] fine [] restitution.

    []   the interest requirement for the: [] fine  [] restitution is modified as follows:

   ** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996

AO 245B (Rev. 11/11)  Sheet 6 - Schedule of Payments

DEFENDANT:         JAY ANTHONY ANDERSON
CASE NUMBER:       16CR139 (SRN)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A      [X]      Lump sum payment of **$100,000.00 due within 90 days of the sentencing date**.

                [] not later than   , or
                [] in accordance  [] C, [] D, [] E, or [] F below; or

B      []       Payment to begin immediately (may be combined with [] C,   [] D, or [] F below); or

C      []       Payment in equal   (e.g., weekly, monthly, quarterly)  installments of $  over a period of  (e.g. months or years),  to
                commence   (e.g. 30 or 60 days) after the date of this judgment; or

D      []       Payment in equal   (e.g., weekly, monthly, quarterly)  installments of $  over a period of  (e.g. months or years),  to
                commence   (e.g. 30 or 60 days ) after the release from imprisonment to a term of supervision; or

E      []       Payment during the term of supervised release will commence within  (e.g. 30 or 60 days ) after release from
                imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that
                time; or

F      [X]      Special instructions regarding the payment of criminal monetary penalties: **Pursuant to 18 U.S.C. § 3571, the
                defendant shall pay a fine in the amount of $100,000.00 within 90 days of the sentencing date. Payments are to
                be made to the Clerk of U.S. District Court.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of
Prisons' Inmate Financial Responsibility Program, are to be made to the clerk of court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[]      Joint and Several
        Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several
        Amount, and corresponding payee, if appropriate:

[]      The defendant shall pay the cost of prosecution.

[]      The defendant shall pay the following court cost(s):

[X]     The defendant shall forfeit the defendant's interest in the following property to the United States:
        **The defendant has consented to the destruction or placement into official use by the USFWS, or its designee,
        of the wildlife items intercepted, seized and recovered by the USFWS during the court of this criminal
        investigation and further agrees to abandon all right, title, and interest in those items.**

Payments shall be applied in the following order: (1) assessment, (2) restitution  principal, (3) restitution interest, (4) fine principal, (5) fine interest,
(6) community restitution, (7)penalties, and (8) costs, including costs of prosecution and court costs.

# EXHIBIT 9



**ECF**    Query    Reports ▾    Utilities ▾    Logout

**2:15-cr-00126-RAJ-LRL All Defendants** USA v. Lumber Liquidators, Inc.
Date filed: 10/07/2015
Date terminated: 02/03/2016
Date of last filing: 02/04/2016

Mobile Query

**Query**
Alias
Associated Cases
Attorney
Case File Location...
Case Summary
Docket Report ...
Filers
History/Documents...
Party
Related Transactions...
Status
View a Document

AO 245B (Rev. 12/03)(VAED rev. 2) Sheet 1 - Judgment in a Criminal Case



FILED

FEB - 3 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Norfolk Division

UNITED STATES OF AMERICA

v.

LUMBER LIQUIDATORS, INC.

Defendant Corporation.

Case Number:   2:15cr00126

Defendant Corporation's Attorney:  Patrick Hanes and
John S. Davis

Government Attorney: Stephen Haynie, AUSA and
Patrick Duggan, DOJ

## JUDGMENT IN A CRIMINAL CASE

The defendant corporation pleaded guilty to Counts 1, 2, 3, 4, and 5 of the Criminal Information.

Accordingly, the defendant corporation is adjudged guilty of the following counts involving the indicated offenses:

| Title and Section | Nature of Offense | Offense Class | Offense Ended | Count |
|---|---|---|---|---|
| T. 18 U.S.C. § 542 | Entry of Goods by Means of False Statements | Felony | August 30, 2013 | 1 |
| T. 16 U.S.C. § 3372(a)(1), 3373(d)(2) | Transport of Illegally Imported Timber | Misdemeanor | September 10, 2013 | 2, 3, & 5 |
| T. 16 U.S.C. § 3372(a)(2)(B)(IV), 3373(d)(2) | Import of Illegally Harvested Timber | Misdemeanor | September 23, 2013 | 4 |

As pronounced on February 1, 2016, the defendant is sentenced as provided in pages 2 through 5 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

Signed this _3rd_ day of February, 2016.

_____
Raymond A. Jackson
United States District Judge

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
Sheet 3 – Probation

| | |
|---|---|
| Case Number: | 2:15cr00126 |
| Defendant's Name: | LUMBER LIQUIDATORS, INC., |

# PROBATION

The defendant is hereby placed on probation for a term of **FIVE (5) YEARS,** under the supervision of the United States Probation Office.

The Probation Office shall provide the defendant corporation with a copy of the standard conditions and any special conditions of probation.

The defendant corporation shall not commit another federal, state or local crime during the term of supervision.

The defendant corporation must pay the fine, special assessment, and financial obligations listed on the Criminal Monetary Penalties section of this judgment.

## STANDARD CONDITIONS OF PROBATION

The defendant corporation shall comply with the standard conditions that have been adopted by this court set forth below:

1) within thirty (30) days from the date of the judgment the defendant corporation shall designate an official of the corporation to act as the corporation's representative and to be primary contact with the probation officer;

2) the defendant corporation shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

3) the defendant corporation shall notify the probation officer ten days prior to any change in principal business or mailing address;

4) the defendant corporation shall permit a probation officer to visit the corporation at any of its operating business sites;

5) the defendant corporation shall notify the probation officer within seventy-two (72) hours of (A) any material adverse change in its business or financial condition or prospects, or (B) the commencement of bankruptcy proceeding, criminal prosecution, major civil litigation, or administrative proceeding against the corporation, or any investigation or formal inquiry by governmental authorities regarding the corporation;

6) the defendant corporation shall not dissolve, change its name, or change the name under which it does business unless the judgment and all criminal monetary penalties imposed by this court are either fully satisfied or equally enforceable against the defendant corporation's successors or assignees;

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
Sheet 3A – Probation

| | |
|---|---|
| Case Number: | 2:15cr00126 |
| Defendant's Name: | LUMBER LIQUIDATORS, INC., |

# SPECIAL CONDITIONS OF PROBATION

While on probation pursuant to this Judgment, the defendant shall also comply with the following additional special conditions:

1) At its own expense and at no expense to the Government, the defendant and subsidiaries shall implement the agreed upon Environmental Compliance Plan ("ECP"). The defendant shall fully implement the ECP within three months of the date of sentencing. In the sole and exclusive discretion of the Government, if the Government determines that the defendant has not fully implemented the ECP within three months, the defendant shall cease the importation of hardwood flooring until the Government determines that the ECP has been fully and satisfactorily implemented. Without prejudice to the foregoing, in the sole and exclusive discretion of the Government, and with the mutual written consent of the defendant and the U.S. Probation office, the implementation date of the ECP may be modified or extended.

2) During the first four years of probation, the defendant shall engage an outside accounting and/or environmental consulting firm to conduct three audits of all aspects of its compliance with both the (i) ECP and (ii) plant declaration, transportation, and importation requirements and prohibitions set forth in the Lacey Act, 16 U.S.C. § 3372(a), (d) & (f). The auditors shall generate a written report of their findings and recommendations. The reports are due within 18 months, 35 months, and 48 months respectively of sentencing. Each report shall be transmitted to the Government and the Probation office. At the Government's or Probation Office's exclusive and separate options, the defendant shall conduct an additional audit that covers year 5 of the probation term. The above audits shall be at no cost to the Government or the Probation Office.

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

| | |
|---|---|
| Case Number: | 2:15cr00126 |
| Defendant's Name: | LUMBER LIQUIDATORS, INC., |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments on Sheet 6.

| Count | Assessment | Fine | Restitution |
|---|---|---|---|
| 1 | $400.00 | $7,800,000.00 | $0.00 |
| 2 | $125.00 | $0.00 | $0.00 |
| 3 | $125.00 | $0.00 | $0.00 |
| 4 | $125.00 | $0.00 | $0.00 |
| 5 | $125.00 | $0.00 | $0.00 |
| TOTALS: | $900.00* | $7,800,000.00 | $0.00 |

*The Special Assessment was paid in full on October 29, 2015.

## FINES

The defendant corporation shall pay a fine of $7,800,000 as to count 1.

## COMMUNITY SERVICE PAYMENTS

The defendant corporation shall pay community service payments totaling $1,230,825.

## FORFEITURE

The Court entered a Consent Order of Forfeiture on October 22, 2015.

AO 245B (Rev. 12/03)(VAED rev. 2) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

| | |
|---|---|
| **Case Number:** | **2:15cr00126** |
| **Defendant's Name:** | **LUMBER LIQUIDATORS, INC.,** |

# SCHEDULE OF PAYMENTS

Payment of the total criminal monetary penalties is due as follows:

**Criminal Fine**
Pursuant to the Alternative Fines Act, 18 U.S.C. § 3571(d), the defendant shall pay a criminal fine of $7,800,000. The fine is due and payable according to the following phased payment schedule: (1) $4,000,000 due at sentencing, (2) $2,000,000 due within 12 months of sentencing, and (3) any outstanding balance due within 24 months of sentencing. Pursuant to 16 U.S.C. § 3375(d), the entire fine shall be directed to the Lacey Act Reward Fund at the following address: Lacey Act Reward Fund, USFWS, Cost Accounting Section, P.O. Box 272065, Denver, CO 80227-9060, with the note "Case No. 2012803149."

**Community Service Payments**
Within 72 hours of sentencing, the defendant shall make two community service payments, totaling $1,230,825. Defendant shall not seek or accept any tax offset or reduction for the community service payments, nor shall the defendant seek any marketing, advertising, or public relations benefit from the payments. Unless otherwise ordered by the Court, payment shall be made by cashier's or certified check, and the defendant shall file a Notice of Proof of Payment with the Court within five days of sentencing. The payments are as follows:

1. National Fish and Wildlife Foundation ("NFWF"). The defendant shall make a one-time payment of $880,825 to the National Fish and Wildlife Foundation. The payment to NFWF shall be sent to the following address: National Fish and Wildlife Foundation, Attn: Chief Financial Officer, 1133 15th Street NW, Suite 1100, Washington, DC 20005, with the case number specified in the note field of the check. NFWF shall exclusively utilize the $880,825 payment for two separate projects, as follows:

   A. *NFWF Project 1 – Timber Identification Technology.* $500,000 to fund one or more projects designed for the development, testing, training, ground-truthing, experimentation, and/or employment or electronic wood identification devises, that identify the genus and species – and if possible, country of origin – of timber and wood products in a non-laboratory setting. Priority shall be given to development of cost-effective ID devices that can be utilized in field inspection, enforcement, or border interdiction scenarios with a high degree of accuracy and precision,

   B. *NFWF Project 2 – Amur Leopard Conservation.* $380,825 to fund one or more projects designed to further research and conservation efforts aimed at protecting, restoring, and rehabilitating with Amur leopards and their habitat.

2. Rhinoceros and Tiger Conservation Fund. The defendant shall make a one-time payment of $350,000 to the USFWS Rhinoceros and Tiger Conservation Fund at the following address: Rhinoceros and Tiger Conservation Fund, USFWS, Budge Analyst-Program Support, 5275 Leesburg Pike, MS: IA, Falls Church, VA 22041-3803 with the case number and *"Panthera tigris altaica"* in the note of the check. The payment shall be used exclusively for research and conservation efforts aimed at protecting, restoring, and rehabilitating wild tigers (with highest priority given to the *altaica* subspecies) and their habitat.

3. Conditions. NFWF and the Rhinoceros and Tiger Conservation Fund shall obligate one quarter of the respective community service payments within 12 months of sentencing; the funds shall be fully obligated by no later that 24 months of sentencing. Projects shall be designed so that funding will be fully expended by no later than 60 months of sentencing. NFWF and the Rhinoceros and Tiger Conservation Fund shall separately be required to prepare and provide to the parties and the U.S. Probation Office annual reports detailing expenditures, goals, progress, results, and future plans.